UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PAYROLL RESOURCE GROUP,<br>    Plaintiff,<br>v.<br>HEALTHEQUITY, INC.,<br>    Defendant. | Case No. 23-cv-02794-TSH<br><br>**ORDER DENYING: MOTION TO DISMISS**<br>Re: Dkt. No. 42 |

## I. INTRODUCTION

Pending before the Court is Defendant HealthEquity, Inc.'s Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 42. Plaintiff The Payroll Resource Group filed an Opposition (ECF No. 45) and Defendant filed a Reply (ECF No. 46). For the reasons stated below, the Court **DENIES** the motion.[1]

## II. BACKGROUND

In April 2002, Plaintiff The Payroll Resource Group entered into a written agreement ("Agreement") with MHM Business Services ("MHM") for a license to use MHM's proprietary payroll software known as WinFlex125. First Amended Complaint ("FAC") ¶ 5, ECF No. 31. Under the terms of the Agreement, Plaintiff paid a one-time set-up fee, and subsequently paid monthly fees "for licensing privileges and technical support." ECF No. 31-1 at 2. MHM was acquired by WageWorks in or around 2007; MHM and/or WageWorks provided services under the terms of the Agreement until 2019. FAC ¶ 6. On or about September 2019, MHM and/or WageWorks assigned the Agreement to Defendant HealthEquity, Inc. *Id.* In June 2020,

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 7, 8.

1   HealthEquity wrote to Plaintiff, informing Plaintiff that it would no longer support the software.
2   FAC ¶ 10.
3         Plaintiff inquired whether HealthEquity would allow Plaintiff to continue to access the
4   Software without any updates or support or provide the Software to Plaintiff so it could run on
5   Plaintiff's systems. FAC ¶ 10. HealthEquity refused. *Id.* Plaintiff then asked HealthEquity
6   whether it would consider selling the Software to Plaintiff. *Id.* HealthEquity later wrote to
7   Plaintiff that it "[would] not pursue the sale of the WinFlexOne platform. Thus, as of March
8   2022, the platform will be sunset." *Id.* ¶ 11. Plaintiff requested access to continue to use the
9   software in an unsupported state. *Id*. ¶ 13. Plaintiff alleges that Defendant stopped providing both
10  access to and support for the Software on August 31, 2022. *Id.* ¶¶ 15, 17.
11        On May 2, 2023, Plaintiff filed this action in California Superior Court, alleging breach of
12  contract under Missouri law and violation of California's Unfair Competition Law ("UCL"),
13  Section 17200. *See* Compl., ECF No. 1-2. Defendant removed to federal court based on diversity.
14  ECF No. 1.
15        In January 2024, Defendant moved for judgment on the pleadings as to Plaintiff's breach
16  of contract claim, its unfair competition claim, and certain remedies in Plaintiff's Prayer for
17  Relief. ECF No. 18. On April 23, 2024, this Court granted Defendant's Motion for Judgment on
18  the Pleadings as to Plaintiff's breach of contract claim and its UCL claim. ECF No. 23. The
19  Court granted Plaintiff leave to amend its UCL claim and denied leave to amend the breach of
20  contract claim. *Id.* at 8, 12. On May 6, Plaintiff filed a motion for leave to file this First Amended
21  Complaint ("FAC") against HealthEquity. ECF No. 24. On June 13, the Court granted Plaintiff
22  leave to file its FAC. ECF No. 30.
23        In its FAC, Plaintiff again alleges breach of written contract and violation of the UCL,
24  Section 17200. FAC at 1. In Defendant's Motion to Dismiss, Defendant seeks judgment on
25  Plaintiff's breach of contract claim, its unfair competition claim, and on certain remedies in
26  Plaintiff's Prayer for Relief. ECF No. 42.

27                                **III.   LEGAL STANDARD**
28        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of a cause of action's elements, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Documents attached as exhibits to the complaint are considered part of the complaint for purposes of a motion for dismiss. *Amfac Mortg. Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 429–30 (9th Cir. 1978) (considering documents attached to complaint in deciding motion to

dismiss).

## IV.   DISCUSSION

### A.   Plaintiff's Breach of Contract Claim

Defendant HealthEquity argues that Plaintiff's breach of contract claim fails because Plaintiff's "License to Use" the WinFlex125 software does not impose any obligation on HealthEquity to provide that software and because Plaintiff does not have a license to modify the software.  Mot. at 7–8, ECF No. 42.  HealthEquity further argues Plaintiff seeks to force HealthEquity to provide different software from the one it has a license to use.  Mot. at 10.  Plaintiff alleges that the Agreement required HealthEquity to provide the Software in perpetuity.  FAC ¶ 18; Opp'n at 3-6, ECF No. 45.  Missouri substantive law governs Plaintiff's breach of contract claim.  *See* Agreement ¶ 9.

#### 1.   License to Use

HealthEquity contends that Plaintiff's perpetual license to use the software did not confer on HealthEquity any obligation to provide Plaintiff with access to the Software.

In its order on HealthEquity's first motion to dismiss, the Court found that the Agreement grants Plaintiff a perpetual license to use the WinFlex125 payroll software, related documentation, and third-party proprietary software products used in conjunction with the software.  ECF No. 23 at 4; *see* Agreement ¶ 1, ECF No. 31-1 at 5 (granting Plaintiff a "perpetual (unless terminated as provided in this license agreement) license to use . . . the System[,]" referring to the WinFlex125 payroll software, related documentation, and third-party proprietary software products used in conjunction with the software).

HealthEquity contends Plaintiff's perpetual license to use the Software "meant that Plaintiff could use that software without fear that HealthEquity would sue it for infringing its intellectual property rights in the software."  Mot. at 8.  In support of this argument, HealthEquity cites patent infringement cases holding that a license does not convey a property interest in a patent or copyright.  Mot. at 8; *see General Talking Pictures Corp. v. Western Elec. Co.*, 304 U.S. 175, 181 (1938); *Spindelfabrik Suessen-Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987).  HealthEquity thus

concludes that the license only "extended 'in perpetuity' in the sense that HealthEquity would forever forbear from suing Plaintiff for its licensed use of WinFlex125." Mot. at 8. But this is not a patent infringement dispute, and in focusing exclusively on the "license" aspect of the Agreement, Defendant ignores its "use" aspect. "Licensed use" of software presupposes access to that software. Otherwise Defendant could simply have decided not to provide the Software to Plaintiff at any time without breaching the agreement, so long as HealthEquity would forever forbear from suing Plaintiff for using its Software. The Agreement also explicitly provides for the provision of the software:

> Promptly after [Defendant's] receipt of a signed copy of this Agreement and adherence to the payment schedule set forth [pursuant to the Agreement], [Defendant] will schedule its software installation team to make available access to the Software and Documentation and any required Third Party Software.

Agreement ¶ 1, ECF No. 31-1 at 5.

HealthEquity argues that if the license agreement required HealthEquity to provide the Software to Plaintiff in perpetuity, it would never be able to discontinue the Software. Mot. at 8. This argument does not necessarily follow from the pleadings. Neither party has explained how Defendant furnished the Software to Plaintiff or how it ultimately restricted Plaintiff's access to the Software. The Court does not know whether the Software was downloaded on Plaintiff's computers or servers and subsequently uninstalled, whether it existed in a hard copy on a disc or external drive that Plaintiff was forced to return, or whether Plaintiff accessed the Software by some other means. The answers to these questions may inform whether it was practicable for HealthEquity to satisfy the terms of the Agreement, but they do not go to the sufficiency of Plaintiff's breach of contract claim.

Accordingly, the Court finds Plaintiff's "License to Use" the Software imposed an obligation on HealthEquity to provide that software.

**2. Plaintiff's Prior Characterization of the Software as Unusable in an Unsupported State and Allegation in its FAC Regarding "Work Arounds"**

HealthEquity argues that Plaintiff's breach of contract claim must fail because "[e]ither the software is unusable . . . and Plaintiff has no damages, or Plaintiff would have to create an

unauthorized derivative work that would violate the Agreement." Mot. at 9.

HealthEquity argues that Plaintiff cannot show that HealthEquity's alleged breach caused Plaintiff harm because, Defendant contends, Plaintiff previously alleged the Software would be worthless in an unsupported state. Mot. at 8–9. In Plaintiff's original complaint, Plaintiff alleged: "Due to the nature of the Software, Defendant's refusal to maintain and update it served to render it unusable." Compl. ¶ 11, ECF No. 1-2. But while allegations in a since-superseded complaint are admissible as evidence, they do not constitute conclusive admissions. *See Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996). Therefore, even if Plaintiff's current allegations contradict those in the original complaint, that does not mean the Court can disregard the current allegations in ruling on this motion to dismiss.

In the FAC, Plaintiff now alleges it "wished to have continued, unsupported access [to the Software] because, with simple work arounds implemented by PRG, the software could still have been utilized by PRG for a period of years without updates or support." FAC ¶ 13. HealthEquity argues that this fails to plausibly allege damages, interpreting the "simple work arounds" Plaintiff describes in Paragraph 13 of the FAC to mean changes to the Software that would constitute the creation of a derivative work. Mot. at 9. HealthEquity then argues that a provision of the Agreement that reserves to Defendant "all rights not specifically granted to Licensee under this Agreement" prohibits Plaintiff from carrying out any "work arounds" because HealthEquity retains the exclusive right to create derivative works based on its software. *Id.*; *see* Agreement ¶ 1, ECF No. 31-1 at 5. But Plaintiff does not describe in any detail the "work arounds" it would implement to use the Software, nor does HealthEquity explain the basis for its contention that "Plaintiff would have to create an unauthorized derivative work" to carry out these work arounds. Mot. at 9. Whether these work arounds involve changes to the Software that would constitute the creation of a derivative work is a question that the Court cannot decide from the pleadings alone. The Court thus declines to find at the motion to dismiss stage that any such work arounds would necessarily violate the Agreement.

Accordingly, the Court finds Plaintiff's breach of contract claim is not foreclosed by its prior allegation that Defendant's refusal to maintain and update the Software rendered it unusable,

United States District Court
Northern District of California

1 nor by Defendant's reservation of rights to create derivative works based on the software.

### 3. Software at Issue

HealthEquity argues that Plaintiff seeks to force HealthEquity to provide a different software from the one it has a license to use. Mot. at 10. HealthEquity contends that although the software license agreement contains a license for Plaintiff to use the WinFlex125 software, HealthEquity was providing Plaintiff with an entirely different software when the dispute arose. Mot. at 4, 10.

HealthEquity contends Plaintiff seeks to force HealthEquity to provide "WinFlexOne," which HealthEquity argues is a different software from WinFlex125, which is the subject of the Agreement. Mot. at 10. This contention is based on an allegation in Plaintiff's FAC that a representative of HealthEquity wrote to Plaintiff in September 2020 that HealthEquity "[would] not pursue the sale of the WinFlexOne platform." FAC ¶ 11. HealthEquity further contends that Plaintiff declined to license WinFlexOne. Mot. at 4. Defendant provides no basis for this contention, while Plaintiff indicates it does not know the origins of the WinFlexOne name with any certainty. *See* Opp'n at 9 (positing that "[p]resumably . . . the name of the Software furnished to Plaintiff under the Agreement was changed to Winflex One" as part of an update made pursuant to the Agreement). At this stage of the litigation, the Court has no basis to determine whether WinFlexOne is the software now at issue, and if so, whether it is a distinct software suite or the result of an update that remains governed by the Agreement. *See* Agreement ¶¶ 1, 3 (granting license "as the System may be modified, revised, and updated in accordance with this Agreement," and setting forth terms of support obligations). Thus, the Court finds the reference to "WinFlexOne" in Plaintiff's complaint does not foreclose Plaintiff's breach of contract claim.

### 4. Conclusion

For the reasons discussed above, the Court **DENIES** Defendant's motion to dismiss Plaintiff's breach of contract claim.

### B. Plaintiff's Unfair Competition Claim

Under the UCL, any person or entity that has engaged, is engaging, or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof.

7

1  Code § 17203.  The UCL's "purpose is to protect both consumers and competitors by promoting
2  fair competition in commercial markets for goods and services."  *Kwikset Corp. v. Superior Ct.*,
3  51 Cal. 4th 310, 320 (2011) (internal quotations omitted).  "Unfair competition" includes "any
4  unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading
5  advertising," Cal. Bus. & Prof. Code § 17200.

6  Plaintiff states it only alleges a claim under the unfair prong of the UCL.  Opp'n at 10-11.
7  The Court therefore limits its analysis to that prong.  "Under the UCL's unfairness prong, courts
8  consider either: (1) whether the challenged conduct is tethered to any underlying constitutional,
9  statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or
10 violates the policy or spirit of an antitrust law; (2) whether the practice is immoral, unethical,
11 oppressive, unscrupulous or substantially injurious to consumers; or (3) whether the practice's
12 impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer."
13 *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020).

14 Here, Plaintiff alleges that the Defendant completely cut off access to the Software that ran
15 Plaintiff's payroll related business with the goal of knocking Plaintiff out as a competitor and
16 taking its customers in that same line of business.  FAC ¶¶ 5, 15, 26, 28.  Plaintiff alleges that the
17 impact of this conduct on Plaintiff outweighs Defendant's justifications for cutting off access to
18 that Software.  Opp'n at 10–11; *see* FAC ¶¶ 27, 28.  Further, Plaintiff alleges this conduct
19 disrupted a twenty-year business relationship between the parties.  In the face of these allegations,
20 the Court is unable to say that, as a matter of law, Defendant's conduct was not unfair.  This
21 situation is materially different from the one addressed in the Court's prior order, in which the
22 Court found that terminating support for twenty-year-old software is not unfair where there is no
23 contractual obligation to provide that support.  *See* ECF No. 23 at 7–8, 12.  Here the breach
24 allegation is different, and while breaching a contract is not itself "unfair" under the UCL, the
25 related allegations of anticompetitive conduct make this claim sufficient to survive a motion to
26 dismiss.

27 Accordingly, Defendant's motion to dismiss is **DENIED** as to Plaintiff's UCL claim.

28

### C.     Availability of Remedies

On its breach of contract claim, along with compensatory damages, Plaintiff asks for "other economic damages according to proof," "general damages according to proof," costs of suit, and for "prejudgment interest at the legal rate according to proof at time of trial[.]" FAC at 7–8, Prayer for Relief as to First Cause of Action ¶¶ 1–4. On its UCL claim, Plaintiff asks, inter alia, "[t]hat the Defendants be ordered to pay Plaintiff restitution, including restitutionary disgorgement due to Defendants' unlawful and/or unfair activities pursuant to . . . section 17200 *et seq*[.]" FAC at 8, Prayer for Relief as to Second Cause of Action ¶ 2. Defendant contends these remedies should be dismissed from Plaintiff's complaint because they are unavailable under the Agreement. Mot. at 12.

Paragraph 6 of the Agreement, entitled "Disclaimers, Limitations, and Acknowledgments," provides:

> Except for warranties in Paragraph 5, neither MHM nor any Third Party Licensor makes any warranties, express or implied, with respect to this Agreement, the System, or any other matter, including (without limitation) any implied warranty of merchantability, fitness for a particular purpose, or conformity to any representation or description. Except with respect to the infringement indemnification in Paragraph 5, and breach of warranty under sections 5.1 and 5.2, above. MHM' (sic) total liability under this Agreement will not exceed the total fees Licensee paid under this warranty under sections 5.2, above, MHM will not be liable to Licensee or any Third Party for any lost revenues, lost profits, loss of business, or consequential or special damages of any nature, whether or not foreseeable. Third Party Licensors will not be liable to Licensee or any Third Party for any damages, whether direct, indirect, consequential or special damages of any nature, whether or not foreseeable. MHM will not be liable to licensee for the performance of Third Party Software or the warranties made by their vendors. Licensee acknowledges that it is clearly understood that MHM, whether in granting Licenses to use the System for the Purpose of administering Section 125 plans or any other purpose that may involve a question of law, or in any other way, does not render legal services, including plan design and/or actuarial advice, either directly or indirectly, and that Licensee, not MHM, is responsible for obtaining any and all legal and/or related professional advice as to the same.

Agreement at 2 ¶ 6. Paragraph 8 of the Agreement describes bases upon which HealthEquity may terminate the Agreement and states that "Paragraphs 6 and 7 will survive termination of this Agreement." Agreement ¶ 8. Defendant argues that based on the language of Paragraph 6, the

1    Court should dismiss Plaintiff's claims for the remedies of "other economic damages," "general

2    damages," costs of suit, prejudgment interest, and disgorgement contained in its Prayer for Relief.

3    Mot. at 12.  Plaintiff contends the Agreement does not prevent Plaintiff from recovering

4    consequential or special damages.  Opp'n at 12–16.

5          Plaintiff contends it would be inappropriate to dismiss Plaintiff's pleaded remedies

6    pursuant to a motion to dismiss.  In holding that Rule 12(f) does not authorize a motion to strike

7    claims for damages from a complaint because they are precluded as a matter of law, the Ninth

8    Circuit held that such actions are "better suited for a Rule 12(b)(6) motion or a Rule 56 motion,

9    not a Rule 12(f) motion."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir.

10   2010).  Plaintiff cites cases from other districts within this circuit that have since called into

11   question whether a 12(b)(6) motion is an appropriate vehicle to challenge requested remedies.

12   Opp'n at 13; *see, e.g.*, *Sturm v. Rasmussen*, No. 18-cv-01689, 2019 WL 626167, at *2 (S.D. Cal.

13   Feb. 14, 2019) (finding 12(b)(6) motion to dismiss was not proper mechanism to challenge request

14   for punitive damages "[b]ecause a 12(b)(6) motion to dismiss challenges the legal sufficiency of

15   the pleadings, not the appropriateness of the relief sought") (internal quotations omitted);

16   *Kevorkian v. Safeco Ins. Co. of Am.*, No. 3:23-cv-229-RBM-DDL, 2023 WL 6612497, at *9 (S.D.

17   Cal. Oct. 10, 2023) (acknowledging post-*Whittlestone* "split in district courts concerning whether

18   a Rule 12(b)(6) motion is the proper vehicle for challenging the sufficiency of a punitive damages

19   claim").  Neither party has offered any authority to indicate that courts in this district have adopted

20   this position.  In light of the Ninth Circuit's tacit approval in *Whittlestone*, the Court thus declines

21   to find that the 12(b)(6) motion to dismiss is per se an inappropriate vehicle to challenge requested

22   remedies.

23         Plaintiff contends the limitation of liability clause in the Agreement does not apply where

24   Defendant disables access to the Software.  In support of this argument, Plaintiff points to

25   Paragraph 5.2 of the Agreement, which "expressly warrants that the Software does not contain any

26   disabling code, so-called 'time bomb' or 'drop dead devices,' 'back doors,' instructions or other

27   contaminants that could access, modify, delete, damage or disable the Software or any of the

28   functions or features thereof."  Agreement ¶ 5.2.  The Court finds this section of the Agreement

10

inapposite.  Plaintiff does not allege that the Software itself included any disabling code or other self-disabling features.  Rather, Plaintiff alleges that HealthEquity refused to provide Plaintiff continued access to the Software.  FAC ¶¶ 15, 17, 18.  Accordingly, Paragraph 5.2 does not render the limitation of liability clause inapplicable.

Plaintiff further contends the limitation of liability clause in the Agreement only survives termination for cause and not breach of contract.  Opp'n at 14–15.  The Agreement does not explicitly define "termination, " but Paragraph 8 of the Agreement describes bases upon which HealthEquity may terminate the Agreement.  Paragraph 8 provides:

> MHM may immediately terminate this Agreement, retaining its other legal rights, if Licensee (a) fails to pay any license fee due under this Agreement within thirty days after written notice that it is in default in its payments for the same, (b) violates in a material way any of the terms of Paragraphs 1 or 7, or (c) violates in a material way any other term of this Agreement and fails to correct the material violation within thirty days after receiving notice. Upon termination, Licensee will immediately stop using the Software and Documentation and return all copies in Licensee's possession or control. Paragraphs 6 and 7 will survive termination of this Agreement. . . .

Agreement ¶ 8.  Plaintiff contends that the limitation of liability clause does not survive Defendant's alleged breach because Defendant failed to terminate the Agreement for any of the bases set forth in Paragraph 8, and Paragraphs 6 and 7 survive termination.  This argument falls apart upon reading Paragraph 7.  Paragraph 7, titled "Disclosure and Use Restrictions," governs restrictions on the use and disclosure of the other party's confidential information, including Defendant's software source code and Plaintiff's customer lists.  *See* Agreement ¶ 7.  Plaintiff's interpretation of Paragraph 8 would allow Plaintiff to disclose Defendant's confidential information so long as Defendant breached the Agreement.  The Court finds this reading would "yield an unreasonable result[]" and rejects it in favor of the "probable and reasonable" reading that that Paragraphs 6 and 7 survive the end of the contract, however it is effectuated.  *See TNT Amusements, Inc. v. BFC Enterprises, Inc.*, 613 S.W. 3d 403, 409 (Mo. Ct. App. 2020) (holding Missouri courts "will reject interpretation of a contract that yields unreasonable results when a probable and reasonable construction can be adopted.").  Accordingly, the Court finds the limitation of liability clause is enforceable.

11

The Court finds, however, that the limitation of liability clause in Paragraph 6 of the Agreement does not unambiguously foreclose the remedies Defendant seeks to dismiss. The limitation of liability clause provides that Defendant "will not be liable to Licensee or any Third Party for any lost revenues, lost profits, loss of business, or consequential or special damages of any nature, whether or not foreseeable." Agreement ¶ 6. Based on this language, Defendant concludes that the remedies of "other economic damages," "general damages," costs of suit, prejudgment interest and restitutionary disgorgement contained in Plaintiff's Prayer for Relief must be dismissed. Mot. at 12. Defendant offers no authority to indicate that general damages, costs of suit, and prejudgment interest are considered consequential or special damages under Missouri law. And although Paragraph 6 forecloses recovery for loss of revenues, lost profits and loss of business, Plaintiff's prayer for "other economic damages" includes no further explanation of what those damages entail. Nor does Defendant address how Paragraph 6 would foreclose Plaintiff's requested remedy of restitutionary disgorgement. Construing the pleadings in the light most favorable to Plaintiff, it is not clear that the remedies Plaintiff seeks map squarely onto the relief foreclosed by Paragraph 6. *See Whittlestone*, 618 F.3d at 975 n.2 ("Construing the pleadings in the light most favorable to Whittlestone, it appears Whittlestone's claim for lost profits and consequential damages is not per se barred by the contract. The parties may well argue at a later stage of litigation that the intent of the parties or properly admitted extrinsic evidence supports their respective interpretations of the contract").

Accordingly, Defendant's motion to dismiss is **DENIED** as to the remedies Plaintiff seeks in its causes of action for breach of contract and violation of the UCL.

### V. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motion to dismiss.

**IT IS SO ORDERED.**

Dated: September 12, 2024

THOMAS S. HIXSON
United States Magistrate Judge

12